EXHIBIT A

1  Andrew J. Christensen (SBN: 260748)
   Attorney at Law
2  1970 Broadway, Suite 550
   Oakland, CA 94612
3  Tel: (510) 761-7183
   Fax: (510) 680-3430
4  Andrew@CaliforniaHomeLawyer.com

5  Attorney for Plaintiffs
   Gregory Snider and Bryn Snider
6

ENDORSED FILED
SAN MATEO COUNTY

AUG 2 7 2018

Clerk of the Superior Court
By: ANTONIO R. GERONIMO
Deputy Clerk

7        THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
8            IN AND FOR THE COUNTY OF SAN MATEO

9

10  Gregory Snider and Bryn Snider,          CASE NO.:   **18 C I V 0 4 4 6 5**

11              Plaintiffs,                   COMPLAINT FOR:

12        v.                                  1. Breach of Contract;
                                              2. Breach of Covenant of Good Faith and
13  WELLS FARGO BANK N.A.; BSI                   Fair Dealing;
    FINANCIAL SERVICES;                        3. Violations of the Truth In Lending Act 15
14  WILMINGTON SAVINGS FUND                       U.S.C. § 1601 et seq.;
    SOCIETY, FSB D/B/A/                         4. Negligence;
15  CHRISTIANA TRUST, AS TRUSTEE               5. Violation of Business & Professions Code
    FOR BROUGHAM FUND 1 TRUST,                    §17200.
16  and DOES 1 through 50, inclusive,          6. Violation of Civil Code §2923.55;
17                                             7. Violation of Civil Code §2923.6;
                                              8. Violation of Civil Code §2923.7;
18              Defendants.                    9. Violation of Civil Code §2924.10;
                                             10. Breach of Fiduciary Duty
19
20                                            [JURY TRIAL DEMANDED]          **BY FAX**
21

22      **COMES NOW**, Plaintiffs Gregory Snider and Bryn Snider ("Plaintiffs") and allege the
23  following against Defendants, and each of them, as follows:
24                        **I. THE REAL PROPERTY AND PARTIES**
25      1.    Plaintiffs are and at all times herein relevant were adult individuals residing in
26  Redwood City, in San Mateo County, California.
27      2.    The action is against Defendants for damages, equitable and injunctive relief
28  resulting from the Defendants' acts or omissions as set forth herein concerning modification and

1  securitization transactions for Plaintiffs' Subject Property located at 720 Palomar Dr. Redwood City,
2  CA 94062. ("Subject Property.").

3      3.      Defendant WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A/
4  CHRISTIANA TRUST, AS TRUSTEE FOR BROUGHAM FUND 1 TRUST ("WILMINGTON")
5  is a purported beneficiary/investor of the Subject Loan and at all times herein relevant was
6  engaged in business in the County of San Mateo.

7      4.      Defendant BSI FINANCIAL SERVICES ("BSI") is the current servicer of the
8  Subject Loan. BSI regularly engages in mortgage related activities in the State of California and in
9  the County of San Mateo.  Plaintiffs allege that BSI is WILMINGTON'S agent, as it collects
10 payments and performs services on the Subject Loans on behalf of WILMINGTON.

11     5.      Defendant WELLS FARGO BANK N.A. ("WELLS FARGO") was a purported
12 beneficiary/investor of the Subject Loan and at all times herein relevant was engaged in business in
13 the County of San Mateo. WELLS FARGO was the prior beneficiary of the Subject Loan and
14 assigned the Deed of Trust to WILMINGTON in 2017.

15     6.      All references to Defendants' capacity in recorded documents set forth in this
16 Complaint are purported, whether specifically stated or not.

17     7.      Whenever reference is made in this Complaint to any act of any corporate or other
18 business Defendant, that reference shall mean that the corporation or other business did the acts
19 alleged in this Complaint through its officers, directors, employees, agents and/or representatives
20 while acting within the actual and ostensible scope of their authority.

21     8.      The true names and capacities, whether individual, corporate, associate or otherwise
22 of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff, who therefore sue
23 said Defendants by such fictitious names, and Plaintiff will amend this Complaint to show their
24 true names, involvement and capacities when the same has been ascertained.  Plaintiff are
25 informed and believe, and on that basis alleges, that each of the Defendants named herein as DOE
26 was in some manner responsible for the harm and losses suffered by Plaintiffs and/or will be
27 responsible for future harm and losses to Plaintiffs.

28

## II. JURISDICTION AND VENUE

9.     Plaintiffs are and at all times herein relevant were, adult individuals residing in Redwood City, County of San Mateo, State of California.

10.     The Subject Property is located at 720 Palomar Dr. Redwood City, CA 94062 ("Subject Property").

11.     Defendants, and each of them, at all times herein relevant, regularly engaged, and engage, in business in the State of California, County of San Mateo, and regularly provided, and provide, mortgage loan-related and modification services.  The majority of the transactions and events that are the subject matter of this Complaint occurred within the County of San Mateo, State of California.

## III. GENERAL ALLEGATIONS

1.     Plaintiffs purchased the Subject Property in 1986. Since that time, it has been their primary and permanent residence. They both currently reside at the Subject Property.

2.     Plaintiffs refinanced the mortgage in 2007 with a loan of $868,500 from World Savings Bank FSB. The Promissory Note is dated March 21, 2007, and is signed by Plaintiff borrower Gregory Snider.  This was a Pick-A-Payment loan.

3.     The Subject Loan was secured by a Deed of Trust dated March 21, 2007.  This deed of Trust names Plaintiffs Gregory Snider and Bryn Snider, Husband and Wife as borrowers. This Deed of Trust was recorded in San Mateo County on April 2, 2007, document number 2007-049901. The promissory note and deed of trusts are known as the "Subject Loan."

4.     WELLS FARGO became the beneficiary of the note as successor by merger to Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB. While WELLS FARGO was the beneficiary of the Subject Loan, it was serviced by WELLS FARGO HOME MORTGAGE, which is a servicing division of WELLS FARGO.

5.     Defendant WELLS FARGO assigned the Deed of Trust to WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A/ CHRISTIANA TRUST, AS TRUSTEE FOR BROUGHAM FUND 1 TRUST with a Corporate Assignment of Deed of Trust executed on

EXHIBIT A TO NOTICE OF REMOVAL
PAGE 7

February 21, 2017, and recorded in San Mateo County on February 27, 2017 as document number 2017-017491.

6.     On February 22, 2017 servicing of the loan was transferred to BSI FINANCIAL SERVICES. This was communicated to Plaintiffs by letter from WELLS FARGO dated January 31, 2017.

7.     In 2011 Plaintiffs began to suffer a significant financial hardship when Plaintiffs income dropped on account of business difficulties at Mr. Sniders business ABS, his engineering corporation. The business ultimately failed in 2012, and Plaintiffs had to draw money from their 401k retirement savings to make the mortgage payments. In addition, Plaintiff Ms. Snider was taking care of her ailing elderly mother and was not able to work because this care took up all of her time. By March 2013 the Plaintiffs could no longer make the payments and had exhausted their savings. Plaintiffs defaulted on the loan in or about April 2013. Plaintiffs immediately applied for a hardship deferment.

8.     After Mr. Snider's business failed, he had to go back to find work as an employee in late 2013. Plaintiffs applied for a loan modification around that time as soon as Mr. Snider got a job and had regular income to support a modified loan.

9.     WELLS FARGO wrongfully denied this loan modification on September 19, 2013 with a letter from WELLS FARGO stating the Plaintiffs had excessive financial obligations. This was not true, and their financial obligations were not excessive or otherwise outside of the parameters for loan modification at the time.

10.    During 2013 and 2014, Plaintiffs were shuffled through nine different WELLS FARGO home preservation specialists, which is the term for the Single Points of Contact agents (SPOC).

11.    WELLS FARGO senior representative Perry Hilzendeger of the Home Preservation team informed Plaintiffs that they were denied modification because Plaintiff husband Mr. Snider was the only one who could apply for the modification or appeal, and the information submitted by Plaintiff wife Ms. Snider was not acceptable as she was not an authorized representative.

12.   Plaintiffs submitted four complete loan modification applications in 2015, all of which were wrongfully denied. WELLS FARGO acknowledged the receipt of a complete application in a letter dated June 26, 2015. In a letter dated July 1, 2015 WELLS FARGO informed Plaintiffs that in response to their request for mortgage assistance, WELLS FARGO reviewed the application under the Proprietary Step Rate Modification for a short term lowered payment. WELLS FARGO denied the modification stating that Plaintiffs did not meet the requirements of this program because based on Plaintiffs' income of $10,372.72 per month "we are unable to create an affordable mortgage payment that still meets the requirements of the program." This was false, and Plaintiffs allege that WELLS FARGO used the incorrect standards and calculations when making this determination.

13.   Plaintiffs appealed the wrongful denial of the loan modification and WELLS FARGO never responded.

14.   On or about July 7, 2015 at 10:00 AM Plaintiffs spoke on the phone with WELLS FARGO agent Nicky Laureles who told Plaintiffs that for an in-house modification could be obtained with a 59% debt to income ratio (DTI).  Plaintiff's payment was $5,291.19, which resulted in a 52% DTI, and therefore they should have qualified, but were wrongfully denied.

15.   Plaintiffs submitted a loan modification application in June 2015 according to the requirements of the Proprietary Step Rate Program. In a letter dated June 29, 2015 WELLS FARGO denied them the modification based on the results of the Net Present Value (NPV) evaluation. This denial was wrongful because WELLS FARGO utilized an inaccurate property appraisal that significantly over-stated the value of the property.

16.   In the same letter dated June 29, 2015 WELLS FARGO told Plaintiffs that they were reviewed for the MAP2R modification program.  WELLS FARGO described the MAP2R program as "Program description: MAP2R modification is a home preservation product that modifies the original loan terms to temporarily lower the monthly payment over a specified period of time. If the modification of the loan terms include reduction of the interest rate, the rate will gradually increase over a specified period of time."   This is an inaccurate and materially

1  misleading description of the program, which was established by a court approved settlement of
2  the Pick-A-Payment class action case.

3      17.    WELLS FARGO wrongfully denied the MAP2R modification based on the results
4  of the Net Present Value (NPV) evaluation. This denial was wrongful because WELLS FARGO
5  utilized an inaccurate property appraisal that significantly over-stated the value of the property.

6      18.    WELLS FARGO wrongfully denied Plaintiffs appeal of modification denial by
7  alleging that the July 2015 appeal was not completed because authorized third party Erika
8  Alvarado did not submit a requested rental agreement within 30 days. This is false because
9  Plaintiffs never had a rental agreement with tenants to submit, and it was therefore unnecessary.
10 This request for inapplicable documents improperly caused the modification appeal to be denied.

11     19.    In September 2015, Plaintiffs sent in a payment to Wells Fargo in the amount of
12 $6,069.45 according to express instructions given to Plaintiffs by WELLS FARGO. However,
13 WELLS FARGO wrongfully rejected that payment, and returned the check in a letter dated
14 September 10, 2015.

15     20.    WELLS FARGO wrongfully denied another loan modification application by using
16 the excuse that there was not a large enough change in income since the last review to consider a
17 new review. This was not true, because Plaintiffs' income had increased by $30,000 per year.

18     21.    Plaintiffs hired attorney David Chapman to help resolve their issues. Mr. Chapman
19 sent a RESPA Qualified Written Request on or about January 2016.    WELLS FARGO
20 acknowledged receiving it by a letter to Plaintiffs dated January 19, 2016, but never adequately
21 responded to the request as required by law and only sent a partial response.

22     22.    In a letter dated February 24, 2016 WELLS FARGO responded to Mr. Chapman's
23 inquiry related to the Consumer Financial Protection Bureau (CFPB) complaint. WELLS FARGO
24 states that it researched the account history and that dual tracking did not occur.  This is false, and
25 a material misrepresentation.  The letter also states that WELLS FARGO force-placed insurance
26 on the property in 2013 because they could not verify that the Plaintiffs had active homeowner's
27 insurance. This is false, as the Plaintiffs had insurance. Plaintiffs have had homeowners insurance
28 without interruption since 2008 with State Farm.

23.     WELLS FARGO has wrongfully imposed lender placed insurance on the property and billed the expense to Plaintiffs, despite having actual knowledge of Plaintiff's existing insurance. Plaintiffs have had the same homeowners insurance with State Farm since 2008. The Plaintiffs maintain their own insurance because the WELLS FARGO insurance does not provide sufficient coverage. Renee Huber was Plaintiffs' insurance agent for many years, and is the niece of Plaintiff Ms. Snider. Ms. Huber sent WELLS FARGO proof of insurance many times, and WELLS FARGO disregarded this and impounded the force placed insurance anyway for the purpose of making profits from agreements with the insurance companies.

24.     On June 12, 2013 WELLS FARGO paid $5,698.00 for a lender placed homeowners insurance policy for coverage from March 13, 2013 to March 13, 2014. However on September 20, 2013 WELLS FARGO received notice from State Farm that Plaintiffs had insurance. WELLS FARGO cancelled its policy and received a refund of $4,182.00, but never gave the refund to Plaintiffs or accredited it to their account.

25.     In a mortgage statement dated September 16, 2015 WELLS FARGO discloses that it disbursed $1,291 for homeowners insurance that year. This should not have been paid or charged to Plaintiffs because Plaintiffs had their own insurance policy, and WELLS FARGO knew it.

26.     WELLS FARGO also informed Plaintiffs in written correspondence that to review for potential modifications, WELLS FARGO needed to act in accordance with requirements set forth by the investor of the account. This is false information, because at this time, WELLS FARGO was the beneficiary/investor and the servicer, because Wells Fargo Home Mortgage is a division of WELLS FARGO BANK N.A. The letter states "If these are met, the investor may provide options to the customer in order to allow him to maintain ownership of the property." This is false, as the serving agreements provide that the servicer is in charge of modification and loss mitigation, not the investor. This is false and misleading information.

27.     WELLS FARGO stated in written correspondence to Plaintiffs that they don't qualify for HAMP because the loan balance is too high for the program. WELLS FARGO states that they reviewed for many loan modification options from August 2013 to August 2015 but were unable to offer assistance because the negative net present value (NPV) of the account. WELLS

FARGO states that only accounts with a positive NPV are eligible for payment assistance options. Plaintiffs allege on information and belief that these NPV calculations are incorrect based on inaccurate property value appraisals. This happened several times. For example, in 2016 WELLS FARGO asked Plaintiffs to get appraisals. Plaintiffs got three appraisals paying over $600 each time for full walk-through appraisals, not simple BPO or drive-by appraisals, because those do not accurately depict the value of the property since there are serious unfinished repairs and issues with the house that significantly decrease the value of the property. Plaintiff faxed these appraisals to WELLS FARGO. WELLS FARGO told Plaintiff Ms. Snider on the phone that they were not the type of appraisals they accepted, and WELLS FARGO required license information for the appraisers. Ms. Snider submitted licensing items to WELLS FARGO. This caused a delay of several weeks. Then WELLS FARGO informed Plaintiffs that they would not rely on the walk-through appraisals obtained by Plaintiffs, but would rely on their own drive-by BPO appraisal. Plaintiffs believe this is a blatant attempt to wrongfully influence the outcome of the NPV test intended to result in loan modification denial. WELLS FARGO did a drive by appraisal to obtain a high valuation number that was used to deny modification of the loan.

28. Plaintiffs submitted another loan modification application on or about January 2016. WELLS FARGO declined to review a new modification application by letter date January 15, 2016 on account of a new review not being warranted as there was no significant change in income or financial situation, which is false.

29. Plaintiffs applied for another modification in August 2016 during their chapter 13 bankruptcy case, and WELLS FARGO again wrongfully denied Plaintiffs a loan modification. Under the pretext of requesting more documentation, WELLS FARGO made a long list of requirements that are unnecessary, burdensome, and designed solely to cause delay and give excuse for denial.

30. WELLS FARGO again force-placed insurance on the property during the bankruptcy case even though Plaintiffs had insurance, and WELLS FARGO had actual knowledge of this. Wells Fargo illegally double charged Plaintiffs for this insurance.

31.     WELLS FARGO did not provide a single point of contact (SPOC) with adequate information to inform Plaintiffs of the status of the loan. Plaintiffs called many times and were unable to speak to a SPOC that could help them at any time since their April 2013 default on the loan.

32.     WELLS FARGO used the wrong methods to review Plaintiffs for modifications and determine their financial hardships. WELLS FARGO wrongfully changed standards without notice, and used standards that were poorly defined.

33.     A Notice of Default and Election to Sell ("NOD") dated October 21, 2015 was recorded by WELLS FARGO on October 22, 2015 in San Mateo County as document number 2015-112290. The NOD stated that the amount of default was $175,134.02 as of October 21, 2015, and that payments were due since June 1, 2013. This was done while Plaintiffs had a pending loan modification application on file.

34.     Attached to the NOD is a Declaration of Compliance, C.C.P. §2923.55(c), on which WELLS FARGO checked the box indicating that the mortgage servicer has exercised due diligence to contact the borrower pursuant to C.C.P. §2923.55(f). This declaration was signed by Pamela R. Baker, VP of Loan Documentation, on April 16, 2013. No due diligence phone call attempts were made because Plaintiffs were available at all times and did not receive any such calls, nor were aware of any missed calls on their cell phones from WELLS FARGO.

35.     A Notice of Trustee Sale ("NOTS") dated February 11, 2016 was recorded by Barret Daffin Frappier Treder & Weiss LLP on February 16, 2016 as document number 2016-013519.

## **FIRST CAUSE OF ACTION**

### **Breach of Contract**

### **(As Against All Defendants)**

36.     Plaintiffs incorporate the allegations above and below as though they are stated herein.

37.   **Contract:** The Promissory Note dated March 21, 2007 for the Pick-A-Payment loan and the Deed of Trust dated March 21, 2007 together are the Subject Loan and are the contracts between the parties here.

38.   **Plaintiffs' Performance:** Plaintiffs performed under the Subject Loan contract by making payments, and by maintaining homeowner's insurance coverage. As soon as financial hardship made it so they could not pay in April 2013, they applied for a hardship deferment according to the lenders' policies for doing so, then shortly thereafter in September 2013 applied for a modification once their income was back to a level that would qualify them for a loan modification under existing programs at the time.   Plaintiffs have maintained homeowners insurance as required by Paragraph 5 of the Deed of Trust.

39.   **Defendants Breach**: In Paragraph 5 of the Deed of Trust, it states that Plaintiff borrowers are required to pay homeowners insurance. Plaintiffs have maintained insurance on this property according to the terms of this contract.  In Paragraph 7, it states that if borrower does not "keep my promises and agreements made in this Security Instrument" then the lender may purchase insurance required under paragraph 5. It also states that the lender is required to give notice to borrower before doing so.  WELLS FARGO breached this contractual provision by obtaining force-placed insurance while the Plaintiffs borrowers had their own homeowners policy, and WELLS FARGO had actual notice of it. This breach was intentional and made so that WELLS FARGO might obtain commissions and profits from the insurance it places. This is a well-known illegal scheme that has been the subject of numerous lawsuits and published investigations.

40.   Defendants WILMINGTON and BSI are continuing to breach the contract now by continuing to charge Plaintiffs for lender placed insurance.

41.   WELLS FARGO also breached the contract by charging more interest that is allowed under the note. The promissory note provides for interest at 7%, but WELLS FARGO has charged up to 12% interest during the life of the loan in violation of the maximum interest rate allowed by the contract.

42.   WELLS FARGO breached the contract by rejecting payments that Plaintiffs sent in according to direct instruction from WELLS FARGO. In September 2015, Plaintiffs sent in a

payment to Wells Fargo in the amount of $6,069.45 according to express instructions given to Plaintiffs by WELLS FARGO. However, WELLS FARGO wrongfully rejected that payment, and returned the check in a letter dated September 10, 2015.

43. **Damages**: As a proximate result of WELLS FARGO's breach of the contracts, and placing of unnecessary insurance, Plaintiffs were charged many thousands of dollars of unnecessary and illegal insurance premiums. Plaintiffs have suffered, and continue to suffer, damages in the form of increased arrears, interest, and penalties, as well as unjustified damage to their credit. Plaintiffs are now threatened with the potential loss of the Subject Property to foreclosure. Plaintiffs suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

44. WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth for compensatory damages, attorney fees under the mortgage contract, and injunctive relief to prevent further violations.

**SECOND CAUSE OF ACTION**

**Breach of Covenant of Good Faith and Fair Dealing**

**(As Against all Defendants)**

45. Plaintiffs incorporate the allegations above and below as though they are stated herein.

46. In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract, and a breach of this covenant by failure to deal fairly or in good faith gives rise to an action for damages.

47. **Contract**: The Promissory Note dated March 21, 2007 for the Pick-A-Payment loan and the Deed of Trust dated March 21, 2007 together are the Subject Loan and are the contracts between the parties here.

48. **Plaintiffs' Performance:** Plaintiffs performed under the Subject Loan contract by making payments, and by maintaining homeowner's insurance coverage. As soon as financial hardship made it so they could not pay in April 2013, they applied for a hardship deferment according to the lenders' policies for doing so, then shortly thereafter in September 2013 applied

for a modification once their income was back to a level that would qualify them for a loan modification under existing programs at the time.   Plaintiffs have maintained homeowners insurance as required by Paragraph 5 of the Deed of Trust.

49.   **Breach of Implied Covenant:** As set forth above, Defendants breached the covenant by obtaining insurance coverage that was unnecessary and expensive and provided inferior coverage. The Covenant of Good Faith and Fair Dealing would require here that WELLS FARGO not place insurance where they have reason to believe that Plaintiffs maintain their own coverage. Plaintiffs have had State Farm insurance for many years. Their insurance agent Ms. Huber is the niece of Plaintiff Ms. Snider.  Ms. Huber sent WELLS FARGO notice of insurance coverage many times at Ms. Sniders request because of this repeated problem of WELLS FARGO charging Plaintiffs for unnecessary insurance. Furthermore, even if any of the notices were accidentally sent late for any reason, or if WELLS FARGO had misplaced the notices, WELLS FARGO had record of State Farm insurance for many years and certainly knew how to reach the insurance company or agent to verify coverage before obtaining force-placed lender insurance. WELLS FARGO did not do this, and repeatedly acted in bad faith by charging Plaintiffs for unnecessary insurance.

50.   WELLS FARGO also violated this covenant by abusing its discretion and selecting a policy in bad faith with substandard coverage at an unreasonably high cost for the purpose of making profit at the expense of Plaintiffs.

51.   This expensive and substandard insurance was outside of the parties' reasonable expectations, and was for the sole purpose of making higher profits in the form of kickbacks and commissions.

52.   Each of Defendants' many denials of loan modification applications during the last five years will be shown to be wrongful and improper, each made in violation of the covenant of good faith and fair dealing. This is because each denial was based on an improper excuse, or application of incorrect standards, or failure to supervise agents, or gross negligence, or intentional misconduct.  This began at WELLS FARGO and is continued now by WILMINGTON and BSI.

53.    Another way in which WELLS FARGO violated this covenant of good faith and fair dealing was to knowingly use inaccurate appraisals to artificially inflate the value of the property so that the NPV analysis would result in denial of modifications for the Plaintiffs. In 2016 Plaintiffs obtained three full on-site appraisals paying over $600 each time and sent them to WELLS FARGO by fax. WELLS FARGO ignored these and instead used its own BPO or drive-by appraisals that do not accurately depict the value of the property since there are serious unfinished repairs and issues with the house that significantly decrease the value of the property.

54.    **Causation/Damages:** As a proximate result of WELLS FARGO's breach of the covenant of good faith and fair dealing, and placing of unnecessary insurance, Plaintiffs were charged many thousands of dollars of unnecessary and illegal insurance premiums. Plaintiffs have suffered, and continue to suffer, damages in the form of increased arrears, interest, and penalties, as well as unjustified damage to their credit. Plaintiffs are now threatened with the potential loss of the Subject Property to foreclosure. Plaintiffs suffered further damages all within an amount that is within the jurisdiction of this court and according to proof at trial.

55.    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Violations of the Truth In Lending Act 15 U.S.C. § 1601 et seq.**

**(As Against WELLS FARGO)**

56.    Plaintiffs incorporate the allegations above and below as though they are stated herein.

57.    TILA disclosure requirements 15 U.S.C. § 1601, et seq. apply here because Plaintiffs' loan is a consumer credit plan secured by their principal dwelling.

58.    WELLS FARGO is a creditor as defined by TILA because it owned Plaintiffs' mortgage loan. By changing the terms of the mortgages, WELLS FARGO created new loan obligations, and WELLS FARGO was the creditor.

59.    TILA requires accurate and full disclosure by WELLS FARGO of the terms of the legal obligations between the parties. 12 C.F.R. § 226.17(c). WELLS FARGO violated this law by

EXHIBIT A TO NOTICE OF REMOVAL
PAGE 17

force placing insurance on the Plaintiffs' home and did not disclose the terms of those agreements, the profits, kickbacks, commissions, or any new disclosures. WELLS FARGO changed the terms of the agreement to allow kickbacks. Plaintiffs allege that these changes in terms amounted to an extension of new and additional credit through force-placed lender insurance premiums, and this new extension of credit requires disclosures which WELLS FARGO did not provide in violation of the TILA requirements.

60.     WELLS FARGO is still presently charging Plaintiffs for unnecessary and illegal force-placed insurance.

61.     Plaintiffs are entitled to damages and attorney fees and costs under 15 U.S.C. §1640(a).

62.     WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**Negligence**

**(As Against all Defendants)**

63.     Plaintiffs incorporate the allegations above and below as though they are stated herein.

64.     **Duty:** Defendants had a duty to act reasonably during the processing of Plaintiffs' loan modification application and the process of granting a permanent modification. To establish a duty of care, the court may consider the following factors:

65.     The transaction was intended to benefit Plaintiff- All of the transactions regarding modifications were intended to benefit Plaintiffs. Plaintiffs were induced into the loan modification process on the promise that it would lower their monthly mortgage payments.

66.     Foreseeability of harm to Plaintiff- It was foreseeable that if Defendants acted unreasonably in the processing of Plaintiffs' loan modification application and the granting of the permanent modification then Plaintiffs would be harmed, as Defendants knew that the transaction affected Plaintiffs' ability to pay their mortgage.

67.   <u>Degree of certainty that Plaintiff suffered injury</u>- Plaintiffs have suffered injury in that they forewent seeking other remedies and accumulated excess arrears and penalties. Plaintiffs spent countless hours, energy and resources in their attempts to obtain a loan modification.

68.   <u>Closeness of the connection between Defendant's conduct and the harm suffered</u>- If Defendants had not acted unreasonably during the loan modification process, Plaintiffs would have been able to seek other remedies and may have been able to avoid foreclosure proceedings.

69.   <u>Moral blame attached to Defendant's conduct</u>- Defendants are to blame for acting unreasonably in the modification process. As a result of Defendants' actions, Plaintiffs suffered extreme stress and anxiety due to imminent and sustained risk of loss of their family home and have suffered further damages.

70.   <u>Policy of preventing future harm</u>- The Court should prevent future harm by holding Defendants liable for their unreasonable conduct in processing Plaintiffs' loan modification applications.

71.   **Breach of the Duty of Care:** WELLS FARGO breached the duty of care by not properly supervising agents who changed or failed to implement or correctly apply the loan modification eligibility requirements. Each of the many loan modification applications submitted between 2013 and 2017 described in the statement of facts herein were wrongfully denied by WELLS FARGO agents not properly applying the standards. This includes the denial based on the NPV analysis which was calculated with the wrong property value, the incorrect application of the monthly income and debt to income ratios, and Defendant's claiming that Plaintiffs failed to submit documents that were either not required, or had already been submitted, such as the requirement of the rental agreement.   The MAP2R modification program was described improperly in a letter to Plaintiffs which indicates WELLS FARGO agents are not properly reviewing letters before they go out, and not informing Plaintiffs of the true and accurate nature and requirements of the modification program.

72.   WELLS FARGO breached the duty of care by telling Plaintiffs to make payments, then rejecting the payments. In September 2015, Plaintiffs sent in a payment to Wells Fargo in the amount of $6,069.45 according to express instructions given to Plaintiffs by WELLS FARGO.

However, WELLS FARGO wrongfully rejected that payment, and returned the check in a letter dated September 10, 2015.

73.     WELLS FARGO breached the duty of care by not using the correct property valuation appraisals supplied by Plaintiffs that were full on-site walk-through appraisals that properly accounted for the dilapidated nature of the interior, and the unfinished construction projects that decreased the value of the properties. WELLS FARGO has a duty to review appraisals and not to use its own BPO drive-by appraisals that are inherently less accurate.

74.     WELLS FARGO was negligent in training and equipping the Single Point of Contact agents to be able to answer Plaintiffs questions about their modifications, and Plaintiffs struggled to obtain useful information from uninformed agents.

75.     **Damages:** As a proximate result of Defendants' conduct in violating their duty to act reasonably in the modification process, Plaintiffs have suffered injury. Specifically, Plaintiffs spent time, energy and resources in their attempts to obtain a loan modification, experienced damage to their credit, suffered increased interest and arrears that they would not have otherwise incurred, forewent seeking other remedies and solutions, suffered extreme emotional stress, distress, anxiety, depression, and insomnia, incurred legal fees and costs, and now face the imminent loss of the Subject Property, all within an amount that is within the jurisdiction of this court and according to proof at trial.

76.     WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### FIFTH CAUSE OF ACTION

**Violation of Business and Professions Code §17200**

**(As Against all Defendants)**

77.     Plaintiffs incorporate by reference the allegations set forth above and below as though fully set forth herein.

78.     Plaintiffs allege that the unlawful acts and practices of Defendants alleged herein constitute unlawful or unfair business practices within the meaning of California Business and

Professions Code §17200, et seq. unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

79. Specifically, Defendants have repeatedly and wrongfully denied loan modification to Plaintiffs numerous times when Plaintiffs qualified for the modifications, as described in the general factual allegations herein. WELLS FARGO was under court order to do so in the Pick-A-Payment class action settled in 2011, but continually failed to abide by many rules established by that settlement, and by the California Home Owner Bill of Rights (HBOR), and CFPB rules. WELLS FARGO is liable for this wrongful and illegal conduct under §17200.

80. It is unfair and misleading for WELLS FARGO to have completely mischaracterized the MAP2R modification program in the June 29, 2015 letter to Plaintiffs. It was illegal under HBOR for the Notice of Default to be recorded under §2923.55 and §2923.6 as described below.

81. WELLS FARGO is liable under §17200 for obtaining force-placed lender homeowner insurance on the property and charging Plaintiffs for it when WELLS FARGO had actual knowledge that Plaintiffs had their on valid current polices, and had for many years without any gap in coverage. This has amounted to many thousands of dollars in illegal extra escrow charges to Plaintiffs account. The mortgage statements show these amounts being charged, and letters from WELLS FARGO to Plaintiff admit charging thousands of dollars, then receiving notice of borrower's own insurance policy with State Farm, then obtaining a refund of WELLS FARGO's payments, but not crediting that amount to Plaintiffs escrow account. In other words, charging Plaintiffs for escrow payments not made by WELLS FARGO. Plaintiffs allege and believe that this is in furtherance of a plan by WELLS FARGO to make money from lender placed insurance policies that cost significantly more than borrower placed insurance, because WELLS FARGO has relationships or agreements for profit sharing from this more expensive insurance. This is an unfair business practice.

82. Further, Defendants committed numerous acts of negligence in the handling and processing of Plaintiffs' loan modification applications as described above.

83. The totality of WELLS FARGO's conduct was inherently unfair to Plaintiffs as it was against public policy, immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs, specifically, and consumers, in general. Plaintiffs were tricked into the Pick-A-Payment loan which has a well established reputation in many court cases as having been falsely advertised and harmful to borrowers. Then when Plaintiffs inevitably defaulted, WELLS FARGO repeatedly refused modifications willfully and wrongfully in an effort to keep Plaintiffs in default because WELLS FARGO makes a greater profit servicing loans in default. There is no other explanation for such a long series of wrongful loan modification denials where Plaintiffs' have documented the ability to pay and qualify for modification.

84. Additionally, WELLS FARGO's conduct as described throughout this Complaint was unfair in that the negative impact on Plaintiffs (as described above) far outweighs any benefit to WELLS FARGO. WELLS FARGO exploited its superior position in the transaction in attempts to affect a wrongful foreclosure despite Plaintiffs' attempt to seek a loan modification in good faith and Plaintiffs' compliance with all requirements for the MAP2R modification program that WELLS FARGO was under court order to implement in the Pick-A-Payment class action.

85. On June 12, 2013 WELLS FARGO paid $5,698.00 for a lender placed homeowners insurance policy for coverage from March 13, 2013 to March 13, 2014. However on September 20, 2013 WELLS FARGO received notice from State Farm that Plaintiffs had insurance. WELLS FARGO cancelled its policy and received a refund of $4,182.00, but never gave the refund to Plaintiffs or accredited it to their account. This is illegal and unfair, and allowed WELLS FARGO to obtain money it otherwise was not entitled to.

86. Defendants also engaged in the unfair practice of dual-tracking by proceeding towards foreclosure while Plaintiffs were in the loan modification process.

87. By engaging in the above-described acts and practices which include intentionally misleading Plaintiffs, to their detriment, Defendants engaged in acts likely to deceive Plaintiffs and the general public in violation of California Business and Professions Code §17200, et seq.

88. Further, Defendants have acted in a manner that is both wrongful and likely to mislead members of the general public in their actions regarding Plaintiffs' loan modification.

89.    As a result of Defendants' wrongful conduct, Plaintiffs have suffered and continue to suffer injury, including but not limited to fees and penalties, and increased interest and arrears that they would not have otherwise incurred. This includes many thousands of dollars for insurance premiums they are not allowed to charge Plaintiffs for homeowners insurance. The exact amounts will be determined in discovery. Further, Plaintiffs spent time and money engaging in the modification process and gave Defendants access to personal financial data that they were otherwise not entitled to receive. Moreover, Plaintiffs have incurred legal fees and expenses to enforce their rights, and have suffered and continue to suffer additional damages all within an amount that is within the jurisdiction of this court and according to proof at trial. Plaintiffs seek restitution and disgorgement of the fees and penalties assessed to their account.

90.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SIXTH CAUSE OF ACTION

**Violation of Cal. Civ. Code §2923.55**

**(As Against all Defendants)**

91.    Plaintiffs incorporate the allegations above and below as though they are stated herein.

92.    Pursuant to Civil Code 2923.55: (1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

93.    A Notice of Default and Election to Sell ("NOD") dated October 21, 2015 was recorded by WELLS FARGO on October 22, 2015 in San Mateo County as document number 2015-112290. Attached to the NOD is a Declaration of Compliance, C.C.P. §2923.55(c), on which WELLS FARGO checked the box indicating that the mortgage servicer has exercised due diligence to contact the borrower pursuant to C.C.P. §2923.55(f). This declaration was signed by Pamela R. Baker, VP of Loan Documentation, on April 16, 2013.

94. Defendants violated this law because the never reached out to Plaintiffs as described in the Declaration. The Plaintiffs had the same phone numbers, and were available to be contacted during that time, but did not receive such contacts, nor any of the notices required by law under this section to be given, including to assess their financial situation, explore options to avoid foreclosure, nor provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.

95. WELLS FARGO violated the due diligence requirement by not attempting to contact the borrower by telephone at least three times at different hours and on different days.

96. WELLS FARGO violated the due diligence requirement by not sending a certified letter, with return receipt requested with the required information.

97. Plaintiffs' deed of trust was recorded in 2006, secured by the owner-occupied Subject Property which was and is the principal residence of the Plaintiffs, containing no more than four dwelling units.

98. The provisions of Civil Code 2923.55 may be enforced by a private right of action.

99. At all times, Plaintiffs were available to be contacted either in person or telephonically in order to assess their financial situation and explore options to avoid foreclosure. However, Defendants have refused and failed to engage in such a meeting.

100. Despite Defendants' failure to comply with these statutory requirements, a Notice of Default was recorded against the property.

101. Tender of the mortgage indebtedness is not a prerequisite to bringing an action under section 2923.55.

102. As a result of the failure of Defendants to comply with the provisions of 2923.55, the NOD is defective and unenforceable and Plaintiffs are entitled to an injunction prohibiting foreclosure proceedings per said NOD, an order or judgment for either removal of the NOD from the County Recorder's Office or if the NOD is not removable because it is a recorded document then an order for its rescission and general and special damages according to proof.

103.    Plaintiffs allege that they have suffered prejudice in that they were not made aware of other foreclosure alternatives, besides a loan modification, before the NOD was recorded. Plaintiffs were also not afforded the opportunity to seek housing counseling through the toll-free phone line.

104.    Plaintiffs have suffered and will continue to suffer damages as a result of Defendants' failure to comply with Civil Code § 2923.55. Plaintiffs' credit has been damaged, they have been forced to expend legal fees and costs and Plaintiffs now face wrongful foreclosure proceedings and face the imminent loss of both title and possession of the Subject Property.

105.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**

**Violation of Cal. Civ. Code §2923.6**

**(As Against all Defendants)**

106.    Plaintiffs incorporate the allegations above and below as though they are stated herein.

107.    Pursuant to Civil Code 2923.6(c): If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

108.    Defendants violated this law by recording the Notice of Default and Election to Sell ("NOD") on October 22, 2015 while a modification application was pending that Plaintiff's had submitted a number of weeks prior to that date, and before the servicer made a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.   The answer had not been received, and the appeal time had not expired.

109.   Plaintiffs' deed of trust was recorded in or around 2006, secured by the owner-occupied Subject Property which was and is the principal residence of the Plaintiffs, containing no more than four dwelling units.

110.   The provisions of Civil Code 2923.6 may be enforced by a private right of action.

111.   Tender of the mortgage indebtedness is not a prerequisite to bringing an action under section 2923.6.

112.   As a result of the failure or defendants or anyone to comply the provisions of 2923.6, the NOD is defective and unenforceable and Plaintiffs are entitled to an injunction prohibiting foreclosure proceedings per said NOD, an order or judgment for either removal of the NOD from the County Recorder's Office or if the NOD is not removable because it is a recorded document then an order for its rescission and general and special damages according to proof.

113.   Plaintiffs allege that they have suffered prejudice in that WELLS FARGO was dual-tracking Plaintiffs' loan, actively moving towards foreclosure while Plaintiffs were in the loan modification process, and rendering all alleged attempts to help Plaintiffs with the loan modification to be moot and contrary to WELLS FARGO's actual intentions.

114.   Plaintiffs have and will continue to suffer damages as a result of Defendants' failure to comply with Civil Code § 2923.6. Plaintiffs' credit has been damaged, they have been forced to expend legal fees and costs and Plaintiffs now face wrongful foreclosure proceedings and face the imminent loss of both title and possession of the Subject Property.

115.   WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### Violation of Cal. Civ. Code §2923.7

### (As Against all Defendants)

116.   Plaintiffs incorporate the allegations above and below as though they are stated herein.

117.   Pursuant to Cal. Civ. Code §2923.7: Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of

contact (SPOC) and provide to the borrower one or more direct means of communication with the single point of contact, and provides a list of obligations and responsibilities of this person.

118. Defendants violated this rule by not providing a knowledgeable SPOC. There were constant changes in the individual SPOC. The SPOC rarely had any useful information, and could not communicate the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options. This occurred many times between 2013 and present. It was obvious from the conversations that the SPOC's assigned to Plaintiffs matter did not have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative. The exact details of these interactions will be obtained in discovery, as the names of the agents, dates of the calls, and content of the conversations are in the records possessed by Defendants.

119. Beginning in early 2013, Plaintiffs began attempts to obtain a loan modification from WELLS FARGO. The persons designated as Plaintiffs' single point of contact failed to communicate foreclosure prevention alternatives to Plaintiff that were specifically required to do so under the MAP2R program as required by the class action Settlement Agreement in the IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION, Northern District of California Case Number M:09-CV-2015-JF.

120. The information received from the SPOC verbally was similar to the description in a letter dated June 29, 2015 where WELLS FARGO inaccurately described the MAP2R program as a short term program, which is false. The explanations of the SPOC are irreconcilable with the actual documents establishing the loan modification program, and this is a violation of Cal. Civ. Code §2923.7.

121. As a result, Plaintiffs experienced delays in the processing of their loan modification, were in the dark as to the status of their loan modification applications, spent additional and unnecessary time, energy and resources in their attempts to obtain a loan modification and attempts to communicate with their assigned SPOC. Plaintiffs now face the possible loss of title of the Subject Property.

122.     As a result of the failure or Defendants or anyone to comply the provisions of 2923.7 the NOD is defective and unenforceable and Plaintiff is entitled to an injunction prohibiting foreclosure proceedings per said NOD, an order or judgment for either removal of the NOD from the County Recorder's Office or if the NOD is not removable because it is a recorded document then an order for its rescission and general and special damages according to proof.

123.     Plaintiffs have and will continue to suffer damages as a result of Defendants' failure to comply with Civil Code § 2923.7. Plaintiffs' credit has been damaged, they have been forced to expend legal fees and costs and Plaintiffs now face wrongful foreclosure proceedings and face the imminent loss of both title and possession of the Subject Property.

124.     WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**NINTH CAUSE OF ACTION**

**Violation of Cal. Civ. Code §2924.10**

**(As Against all Defendants)**

125.     Plaintiffs incorporate the allegations above and below as though they are stated herein.

126.     Pursuant to Civil Code 2924.10(a): "(a) When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:

127.     (1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

128.     (2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

129.     (3) Any expiration dates for submitted documents.

130.    (4) Any deficiency in the borrower's first lien loan modification application."

131.    In this case, WELLS FARGO failed to provide notices for numerous loan modification applications described in this complaint from 2013 through 2017.  During the most recent several loan modification applications since 2015, WELLS FARGO failed to provide a notice that accurately described the loan modification process, notified Plaintiffs of deadlines, noted the expiration date of submitted documents, or accurately described the deficiency in Plaintiffs' loan modification application.   Plaintiffs allege that they suffered prejudice in that they were not informed of the alleged deficiencies in a manner which allowed them to cure any alleged deficiency before arrears mounted to a level Plaintiffs would be unable to cure.

132.    Plaintiffs have and will continue to suffer damages as a result of Defendants' failure to comply with Civil Code §2924.10.  Plaintiffs were denied their opportunity to accept the loan modification and now face a loss of possession and ownership of the Subject Property, their credit has been damaged, and they have been forced to expend legal fees and costs.

133.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## TENTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (As Against all WELLS FARGO)

134.    Plaintiffs incorporate the allegations above and below as though they are stated herein.

135.    WELLS FARGO is a fiduciary to Plaintiffs because WELLS FARGO maintains the escrow fund for payment of property taxes and insurance. As a fiduciary, WELLS FARGO owes a duty to Plaintiffs to act with the utmost good faith in the best interest of the Plaintiffs principal. WELLS FARGO breached this duty by charging too much for unnecessary insurance solely to make a profit for itself at the expense of Plaintiffs.  The Plaintiffs suffered damages in the form of paying increased escrow premiums for insurance they did not need at the time because they were already paying for their own coverage. Plaintiffs are entitled to damages for the thousands of dollars in premiums WELLS FARGO charged Plaintiffs.

1     136.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them,

2    as hereinafter set forth.

3                        **PRAYER FOR RELIEF**

4    **WHEREFORE**, Plaintiffs pray judgment as follows:

5    a.    For compensatory damages in an amount to be determined by proof at trial;

6    b.    For special damages in an amount to be determined by proof at trial;

7    c.    For general damages in an amount to be determined by proof at trial;

8    d.    For punitive damages;

9    e.    For restitution, disgorgement and all other available equitable relief;

10    f.    For an injunction preventing Defendants from proceeding with the foreclosure

11           sale;

12    g.    For an injunction enjoining Defendants from proceeding with the foreclosure as a

13           result of the violations of Cal. Civ. Code §§2923.55, 2923.6, 2923.7, and 2924.10

14           and ordering Defendants to rescind the Notice of Default;

15    h.    For statutory damages and attorney's fees as a result of the willful or reckless

16           violation of Cal. Civ. Code §§2923.55, 2923.6, 2923.7, and 2924.10;

17    i.    For attorney's fees and costs of this action pursuant to the terms of the Subject

18           Deed of Trust;

19    j.    For any prejudgment or other interest according to law; and

20    k.    For such other relief as the Court deems just and proper.

21                   **DEMAND FOR JURY TRIAL**

22                     JURY TRIAL DEMANDED

23    DATED: August 27, 2018

24

25                        Andrew J. Christensen
                           Attorney for Plaintiffs

26                         Gregory Snider and Bryn Snider

27

28

EXHIBIT B

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED FILED**
SAN MATEO COUNTY

**AUG 27 2018**

Clerk of the Superior Court
By: ANTONIO R. GERONIMO
Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WELLS FARGO BANK N.A.; BSI FINANCIAL SERVICES; WILMINGTON SAVINGS FUND
SOCIETY, FSB D/B/A/ CHRISTIANA TRUST, AS TRUSTEE FOR BROUGHAM FUND 1
TRUST, and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Gregory Snider and Bryn Snider

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: San Mateo County Superior Court | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):*<br>400 County Center<br>Redwood City, CA 94063 | *(Número del caso):*<br>18 C I V 0 4 4 6 5 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Andrew J. Christensen
1970 Broadway, Suite 550, Oakland, CA 94612
(510) 761-7183

| DATE: | | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)* AUG 27 2018 | RODINA M. CATALANO | *(Secretario)* ANTONIO R. GERONIMO | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Wells Fargo Bank N.A.

   under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

CEB
www.ceb.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Andrew J. Christensen, Attorney At Law
1970 Broadway, Suite 550
Oakland CA 94612
Andrew@CaliforniaHomeLawyer.com
TELEPHONE NO.: 510-761-7183   FAX NO.: 510-680-3430
ATTORNEY FOR (Name): Plaintiffs Gregory Snider and Bryn Snider

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Same
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

CASE NAME:
Snider v. Wells Fargo et al.

**FILED**
**SAN MATEO COUNTY**

AUG 27 2018

Clerk of the Superior Court

DEPUTY CLERK

18-CIV-04465
CCCS
Civil Case Cover Sheet
1345871

CASE NUMBER: **18CIV04465**

JUDGE:
DEPT:

BY FAX

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): 10
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 27, 2018
Andrew J. Christensen
_(TYPE OR PRINT NAME)_                    ► _(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

# NOTICE OF CASE MANAGEMENT CONFERENCE

Gregory Snider and Bryn Snider **ENDORSED FILED**

**SAN MATEO COUNTY**

Case No: _____  18 C I V 0 4 4 6 5

Vs.

**AUG 2 7 2018**

Date: _____  **JAN 0 9 2019**

Wells Fargo et al

Clerk of the Superior Court
By: ANTONIO R. GERONIMO
Deputy Clerk

Time: 9:00 AM

Dept. _____  —on Tuesday & Thursday

Dept. _____  —on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time, and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a. Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).
   b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c. File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC212(g)]. Failure to do so may result in monetary sanctions.
   d. Meet and confer, in person or by telephone, to consider each of the issues identified in CRC212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10-days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a. Referring parties to voluntary ADR and setting an ADR completion date;
   b. Dismissing or severing claims or parties;
   c. Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:

TELEPHONE NO.:       FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

FOR COURT USE ONLY

| | |
|---|---|
| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |

*(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)    ☐ **LIMITED CASE** (Amount demanded is $25,000 or less)

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:      Time:      Dept.:      Div.:      Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Page 1 of 5
Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 34

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:                          f. Fax number:
   e. E-mail address:                             g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
   a. ADR information package. Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
      (1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
      (2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
   b. Referral to judicial arbitration or civil action mediation *(if available).*
      (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
      (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
      (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 35

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form are willing to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date)*: <br> ☐ Agreed to complete mediation by *(date)*: <br> ☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date)*: <br> ☐ Agreed to complete settlement conference by *(date)*: <br> ☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date)*: <br> ☐ Agreed to complete neutral evaluation by *(date)*: <br> ☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date)*: <br> ☐ Agreed to complete judicial arbitration by *(date)*: <br> ☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date)*: <br> ☐ Agreed to complete private arbitration by *(date)*: <br> ☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date)*: <br> ☐ Agreed to complete ADR session by *(date)*: <br> ☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CASE MANAGEMENT STATEMENT**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20.** Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____       ▷ _____
(TYPE OR PRINT NAME)             (SIGNATURE OF PARTY OR ATTORNEY)

_____       ▷ _____
(TYPE OR PRINT NAME)             (SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached.

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 38

# ALTERNATIVE DISPUTE RESOLUTION
## IN CIVIL CASES



# Civil Appropriate Dispute Resolution (ADR) Information Sheet
## Superior Court of California, San Mateo County

*Appropriate Dispute Resolution (ADR) is a way of solving legal problems without going to trial. All types of disputes can be resolved through ADR. The Court encourages you to use some form of ADR before you proceed to trial. The most popular form of ADR is mediation. The Multi-Option ADR Project can help you choose the option that is best for your case and refer you to an experienced ADR provider.*

## What are the Advantages of Using ADR?

⚮ *Faster* – Traditional litigation can take years to complete but ADR usually takes weeks or months.

⚮ *Cheaper* – Parties can save on attorneys' fees and litigation costs.

⚮ *More control & flexibility* – Parties choose the ADR process most appropriate for their case.

⚮ *Cooperative & less stressful* – In mediation, parties cooperate to find a mutually agreeable solution to their dispute.

## What are the Disadvantages of Using ADR?

⚮ *You may go to Court anyway* – If you can't resolve your case using ADR, you may still have to spend time and money on your lawsuit.

⚮ *Not free* – The neutrals charge fees (except in judicial arbitration), but you may qualify for financial aid.

## Are There Different Kinds of ADR?

⚮ **Mediation** - A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options and agree on a solution that is acceptable to all sides.

⚮ **Judicial Arbitration** – Is an informal hearing where a neutral person (arbitrator) reviews the evidence, hears arguments and makes a decision on your case. In non-binding judicial arbitration, parties have the right to reject the arbitrator's decision and proceed to trial. For more information regarding judicial arbitration, please see the attached sheet.

⚮ **Binding Arbitration** - The parties agree ahead of time to accept the arbitrator's decision as final. Parties who choose binding arbitration give up their right to go to Court and their right to appeal the arbitrator's decision.

⚮ **Neutral Evaluation** - A neutral person (evaluator) listens to the parties, asks them questions about their case, reviews evidence and may hear witness testimony. The evaluator helps the parties identify the most important legal issues in their case and gives them an analysis of the strengths and weaknesses of each side's case. Special neutral evaluation guidelines are available on the Court's website at www.sanmateocourt.org/adr.

⚮ **Settlement Conference** – Although similar to mediation, the neutral (a judge) may take more control in encouraging parties to settle. Settlement conferences take place at the courthouse. All cases have a mandatory settlement conference approximately 2-3 weeks before the trial date.

Appropriate Dispute Resolution Information Sheet
Form adopted for Mandatory Use [CA Rule of Court §3.221] Local Court Form ADR-CV-8 [Sept. 2010, Revised Jan. 2013] www.sanmateocourt.org

## How Does Voluntary Mediation/Neutral Evaluation Work in San Mateo County?

&#x2766;     The person who files the lawsuit (the plaintiff) must include this ADR Information Sheet with the complaint when serving the defendants in the case.

&#x2766;     All the parties in your case will meet with a judge at your first Case Management Conference (CMC), which is scheduled within 120 days of the filing of the complaint. The judge will speak to you about your voluntary ADR options, encourage you to participate in ADR and ask you to meet with Court ADR staff.

&#x2766;     If you and the parties decide to use ADR, Local Rule 2.3(i)(3) states that you must file a *Stipulation and Order to ADR* with the Court Clerk's Office. This form lets the Court know both whom you have selected as your ADR neutral and the date of the ADR session.

&#x2766;     You and the other parties can find your own ADR neutral for the case or use a neutral who is on the Court's ADR Panel.

    o    For a list of Court ADR neutrals and their resumes, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Civil ADR Program," "Civil ADR Program Panelist List" and click on any provider's name.)

&#x2766;     If you decide to do ADR and file a *Stipulation and Order to ADR* at least 10 days before your **first** CMC, the Court will postpone (continue) your first CMC for 90 days to allow the parties time to resolve the case using ADR. The Clerk's Office will send you a notice with your new CMC date.

&#x2766;     Within 10 days of completing ADR, you and your lawyer (if you have one) must fill out either an Evaluation By Attorneys or Client Evaluation and mail or fax it to the ADR offices at: 400 County Center, Redwood City, CA 94063; (650) 599-1754 (fax).

## Do I Have to Pay to Use ADR?

&#x2766;     Yes. You and the other parties will pay the ADR neutral directly. However, you do not have to pay the Court for either judicial arbitration or for the mandatory settlement conference that is scheduled before your trial.

&#x2766;     If you expect to have difficulty paying the ADR provider's fee, ask the ADR Coordinator for a financial aid application. You will need to fill out this application to determine whether or not you qualify for financial assistance.

In San Mateo County, parties also can take their case to the community mediation organization, the Peninsula Conflict Resolution Center ("PCRC"), and have their case mediated by PCRC's panel of trained and experienced volunteer mediators. To learn more about programs and fees, contact PCRC's Manager of Mediation Programs at (650) 513-0330.

**For more information, visit the court website at www.sanmateocourt.org/adr or contact the ADR Program: 400 County Center, Redwood City, CA 94063. Phone: (650) 599-1070, (650) 599-1073 and fax: (650) 599-1754**

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use [CA Rule of Court §3.221] Local Court Form ADR-CV-8 [Sept, 2010, Revised Jan. 2013] www.sanmateocourt.org

*Judicial Arbitration, one of the available Appropriate Dispute Resolution (ADR) options, differs from other options in that it is usually court-ordered, unless the parties agree to it.*

## What are the Advantages of Using Judicial Arbitration?

&#x23E9;     *Free* -Parties do not have to pay for the arbitrator's fee.

&#x23E9;     *Fast* -Parties are usually given 120 days from the date of the Case Management Conference (CMC) to have their case heard by the appointed arbitrator.

&#x23E9;     *Informal* -The hearing is conducted by an arbitrator who issues an award. (Arbitrators are usually attorneys who practice or have practiced in San Mateo County.)

## What are the Disadvantages of Using Judicial Arbitration?

&#x23E9;     The award issued by the arbitrator is not always binding (unless the parties stipulated otherwise). If any party requests a trial within 30 days of the award, the award becomes void and the case continues on to trial.

## How Does Judicial Arbitration Work in San Mateo County?

&#x23E9;     During your first CMC hearing, the judge may decide to order you to judicial arbitration. You will then receive instructions and a proposed list of arbitrators in the mail.

&#x23E9;     Parties also may agree to judicial arbitration by filing a *Stipulation and Order to ADR* form at least 10 days before the first CMC. The CMC clerk will then vacate your CMC hearing and send the case to arbitration. The parties will receive instructions and a proposed list of arbitrators in the mail.

&#x23E9;     Parties can stipulate (agree) to an arbitrator on the Court's Judicial Arbitration Panel list. Otherwise, proposed names of arbitrators will be sent to the parties.

     o     For a list of arbitrators, their resumes, and other information, visit the Court's website at www.sanmateocourt.org/adr. (Go to "Judicial Arbitration Program," "Judicial Arbitration Panelist List" and click on the arbitrator's name. To view the arbitrators by subject matter, click on "Judicial Arbitration Panelists by Subject Matter.")

&#x23E9;     After the arbitration hearing is held and the arbitrator issues an award, the parties have 30 days to turn down/reject the award by filing a Trial de Novo (unless they have stipulated that the award would be binding).

&#x23E9;     If the parties reject the award and request a Trial de Novo, the Court will send out notices to the parties of the Mandatory Settlement Conference date and the trial date.

&#x23E9;     Following your arbitration hearing, you will also receive an evaluation form to be filled out and returned to the Arbitration Administrator.

**For more information, visit the court website at www.sanmateocourt.org/adr or contact Judicial Arbitration: 400 County Center, Redwood City, CA 94063. Phone: (650) 599-1070 or (650) 599-1073 and Fax: (650) 599-1754**

Page 3 of 3

Appropriate Dispute Resolution Information Sheet

Form adopted for Mandatory Use [CA Rule of Court §3.221] Local Court Form ADR-CV-8 [Sept, 2010, Revised Jan. 2013] www.sanmateocourt.org

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number): | Court Use Only |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655  (650) 363-4711 | |
| Plaintiff(s): | Case number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):
☐ Voluntary Mediation          ☐ Binding Arbitration (private)
☐ Neutral Evaluation           ☐ Settlement Conference (private)
☐ Non-Binding Judicial Arbitration CCP 1141.12    ☐ Summary Jury Trial   ☐ Other: _____

Case Type: _____

Neutral's name and telephone number: _____ Date of session: _____

(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____

Original Signatures

| | |
|---|---|
| Type or print name of ☒Party without attorney ☐Attorney for<br>☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant | (Signature)<br>Attorney or Party without attorney |
| Type or print name of ☐Party without attorney ☐Attorney for<br>☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant | (Signature)<br>Attorney or Party without attorney |
| Type or print name of ☐Party without attorney ☐Attorney for<br>☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant | (Signature)<br>Attorney or Party without attorney |
| Type or print name of ☐Party without attorney ☐Attorney for<br>☐Plaintiff/Petitioner ☐Defendant/Respondent/Contestant | (Signature)<br>Attorney or Party without attorney |

## IT IS SO ORDERED:

Date: _____        _____
Judge of the Superior Court of San Mateo County

Stipulation Form 2006, rev. 2012

# ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

> Clerk of the Superior Court, Civil Division
> Attention: Case Management Conference Clerk
> Superior Court of California, County of San Mateo
> 400 County Center
> Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

- ❑ Original signatures for all attorneys (and/or parties in pro per);
- ❑ The name of the neutral;
- ❑ Date of the ADR session; and
- ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the court's Civil ADR Program Panelist List and information sheets on individual panelists, they may visit the court's website at www.sanmateocourt.org/adr.

## If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

## If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

## Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the Civil ADR Program Panelist List or can be downloaded from the court's web site.

## Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted.

For further information regarding San Mateo Superior Court's Civil ADR and Judicial Arbitration Programs, visit the Court's website at www.sanmateocourt.org/adr or contact the ADR offices at (650) 599-1070 or (650)599-1073.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Andrew Christensen, 260748<br>Andrew J. Christensen, Attorney at Law<br>1970 Broadway, Suite 550<br>Oakland, CA 94612<br>TELEPHONE NO.: (510)761-7183<br>ATTORNEY FOR *(Name):* Plaintiff | **FILED**<br>SAN MATEO COUNTY<br><br>SEP 18 2018<br><br>Clerk of the Superior Court<br>By _____<br>DEPUTY CLERK |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF | |
|---|---|
| Superior Court of California, San Mateo County<br>400 County Center<br>Redwood City, CA 94063-1655 | |

| PLAINTIFF/PETITIONER: Gregory Snider and Bryn Snider | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Wells Fargo Bank N.A. Et al. | 18CIV04465 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Complaint, Case Management Statement, Notice of Case Management Conference, ADR Packet

3. a. Party served: Wells Fargo Bank N.A.

  b. Person Served: Sandra Farneth - CSC - Person Authorized to Accept Service of Process

4. Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N
  Sacramento, CA 95833

5. I served the party
  a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 09/17/2018    (2) at (time): 1:43PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  d. on behalf of:

Wells Fargo Bank N.A.
under: CCP 416.10 (corporation)

7. Person who served papers
  a. Name:      Spenser G. Fritz
  b. Address:    One Legal - 194-Marin
          504 Redwood Blvd #223
          Novato, CA 94947

  c. Telephone    ☒ 415-491-0606
  d. The fee for service was: $ 40.00
  e I am:
    (3) registered California process server.
      (i) Employee or independent contractor.
      (ii) Registration No.: 2016-05
      (iii) County: Sacramento

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 09/17/2018

_____
Spenser G. Fritz
(NAME OF PERSON WHO SERVED PAPERS)

(SIGNATURE)

18 – CIV – 04465
PCSBC
Proof of Service on CORPORATION, LLC, etc.
1386214

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

OL# 12313028

EXHIBIT B TO NOTICE OF REMOVAL
PAGE 45

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Andrew Christensen, 260748<br>Andrew J. Christensen, Attorney at Law<br>1970 Broadway, Suite 550<br>Oakland, CA 94612<br>TELEPHONE NO.: (510)761-7183<br>ATTORNEY FOR *(Name):* Plaintiff | **FILED**<br>SAN MATEO COUNTY<br><br>SEP 27 2018<br><br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

Superior Court of California, San Mateo County
400 County Center
Redwood City, CA 94063-1655

| PLAINTIFF/PETITIONER: Gregory Snider and Bryn Snider | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Wells Fargo Bank N.A. et al. | 18CIV04465 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons; Complaint; Case Management Statement; Notice of Case Management Conference; ADR Information

BY FAX

3. a. Party served: Wilmington Savings Fund Society, FSB D/B/A/ Christiana Trust, as Trustee for Brougham Fund 1

   b. Person Served: KAREN ALLAN, Vice President - Person Authorized to Accept Service of Process

4. Address where the party was served: 500 Delaware
   Wilmington, DE 19801

5. I served the party
   b. by substituted service. On (date): 09/19/2018     at (time): 11:15AM  I left the documents listed in item 2 with or in the presence of: Cara Liter, Receptionist - Person In Ch

   (1) (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. on behalf of:

   Wilmington Savings Fund Society, FSB D/B/A/ Christiana Trust, as Trustee for Brougham Fund 1 Trust
   under:    CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:  Michelle L. McLean
   b. Address:   One Legal - 194-Marin
                 504 Redwood Blvd #223
                 Novato, CA 94947
   c. Telephone number: 415-491-0606
   d. The fee for service was: $   199.75
   e. I am:
      (1) Not a registered California process server.

18 - CIV - 04465
PCSBC
Proof of Service on CORPORATION, LLC, etc.
1405024

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:  09/24/2018

Michelle L. McLean
(NAME OF PERSON WHO SERVED PAPERS)                                    (SIGNATURE)

EXHIBIT B - NOTICE OF REMOVAL
PAGE 46

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|---|
| Andrew Christensen, 260748<br>Andrew J. Christensen, Attorney at Law<br>1970 Broadway, Suite 550<br>Oakland, CA 94612 | | (510)761-7183 | |
| ATTORNEY FOR *(Name):* Plaintiff | Ref. No. or File No. | | |

Insert name of court, judicial district or branch court, if any:

San Mateo
400 County Center
Redwood City, CA 94063-1655

PLAINTIFF:

Gregory Snider and Bryn Snider

DEFENDANT:

Wells Fargo Bank N.A. et al.

| PROOF OF SERVICE BY MAIL | 01/09/2019 | 9:00AM | Dept. 11 | CASE NUMBER:<br>18CIV04465 |
|---|---|---|---|---|

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 504 Redwood Blvd., Suite 223 Novato, CA 94947.

~~BY FAX~~

On 09/21/2018, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made (if applicable), I mailed copies of the:

    Summons; Complaint; Case Management Statement; Notice of Case Management Conference; ADR
    Information

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Los Angeles , California, addressed as follows:

Wilmington Savings Fund Society, FSB D/B/A/ Christiana Trust, as Trustee for Brougham Fund 1 Trust

KAREN ALLAN, Vice President

500 Delaware

Wilmington, DE 19801

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Fee for Service: $ 199.75

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

One Legal - 194-Marin
504 Redwood Blvd #223
Novato, CA 94947

Vinnie Garcia

OL# 12313030