United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY SNIDER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | Case No. 18-cv-06353-RS<br><br>**ORDER GRANTING MOTIONS TO DISMISS, GRANTING MOTION TO DISSOLVE PRELIMINARY INJUNCTION, AND DENYING MOTION FOR ATTORNEYS' FEES** |

**I. INTRODUCTION**

This action arises from a dispute between plaintiffs Gregory and Bryn Snider ("Plaintiffs" or "the Sniders") and defendants Wells Fargo Bank ("Wells Fargo"), BSI Financial Services ("BSI Financial"), and Wilmington Savings Fund Society as trustee of the Brougham Fund I Trust ("Wilmington") (collectively, "Defendants") related to Gregory Snider's mortgage and subsequent default. The Sniders allege Defendants violated state law and seek damages, statutory penalties, and injunctive relief preventing foreclosure on their home. In February 2019, Defendants' motions to dismiss the original complaint were granted in part and denied in part. That same day, a preliminary injunction was issued barring the Wilmington Defendants from foreclosing on the Sniders' home. The Sniders subsequently filed a First Amended Complaint ("FAC").

Defendants[1] now move to dismiss the FAC. The Wilmington Defendants also move to

---

[1] Wells Fargo and the Wilmington Defendants (*i.e.* Wilmington and BSI Financial) filed separate motions to dismiss. There is, however, substantial overlap in the arguments advanced in these motions.

strike the breach of fiduciary duty claim advanced against them and to dissolve the preliminary injunction previously issued in this case. The Sniders, for their part, move for attorneys' fees based on their success in obtaining a preliminary injunction. For the reasons set forth below, the Sniders are judicially estopped from pursuing their claims and the FAC is dismissed with prejudice. The Wilmington Defendants' motion to dissolve the preliminary injunction is granted and the Sniders' motion for attorneys' fees based on that injunction is denied. Finally, the Wilmington Defendants' motion to strike is denied as moot.

## II. BACKGROUND

### A. Factual Background

The Sniders purchased their Redwood City home in 1986. In 2007, they refinanced the mortgage with a loan from World Savings Bank. This loan was secured by a Deed of Trust on the house. World Savings Bank (then operating under the name Wachovia Mortgage) subsequently merged with Wells Fargo, at which point Wells Fargo became the beneficiary and servicer of the loan. In February 2017, Wells Fargo assigned the Deed of Trust to Wilmington, who retained BSI Financial as the loan servicer.

In April 2013, the Sniders defaulted on their mortgage and requested a deferment, to which Wells Fargo agreed. The Sniders also submitted a loan modification application, which was denied. Over the course of the next few years, the Sniders submitted several more loan modification applications, which they contend were wrongfully denied. One such application was submitted in June 2015 and denied later that same month. The Sniders' appeal of that decision was denied. On October 22, 2015, Wells Fargo recorded a Notice of Default and Election to Sell ("NOD"). The Sniders, however, contend they had submitted another complete loan modification application only weeks earlier, which had yet to be resolved.

According to the Sniders, Wells Fargo also force-placed insurance on the property several times, beginning in 2013, and billed this insurance to the Sniders' account even though they already had insurance. The bank purchased force-placed insurance again in 2015 and 2016. The FAC further alleges Wells Fargo charged excessive interest and, once the Sniders were in default,

refused to accept payments which would have cured the default.

On March 18, 2016, the Sniders filed a Chapter 13 Bankruptcy Petition. Wilmington RJN, Ex. 5. They did not, however, disclose any of the claims at issue in this case in their bankruptcy schedules. Wilmington RJN, Ex. 6. Wells Fargo subsequently filed with the bankruptcy court a proof of claim detailing the breakdown of the amounts owed on the loan, including all interest and fees. Wilmington RJN, Ex. 7. It appears the Sniders did not object to Wells Fargo's representation regarding the amount owed. Wilmington RJN, Ex. 5. During the course of the bankruptcy, the Sniders also filed multiple proposed Chapter 13 bankruptcy plans. Wells Fargo objected to one such plan for failing to provide for full payment of the arrears. Wells Fargo RJN, Ex. 5. The Sniders subsequently amended their plan in response to this objection. Wells Fargo RJN, Ex. 4.

During the bankruptcy proceeding, the Sniders also moved for an order compelling Wells Fargo to participate in the bankruptcy court's Mortgage Modification Mediation program. Wells Fargo RJN, Ex. 6. The bankruptcy court granted this unopposed motion. Wilmington RJN, Ex. 5. The mediation ultimately proved unsuccessful and the bankruptcy court subsequently confirmed the Sniders' Second Amended Plan in March 2017. Wells Fargo RJN, Ex. 1, 8. Under the plan, the Sniders paid the arears owed to all secured creditors, including Wells Fargo, at 0% interest. Wells Fargo RJN, Ex. 4 at 2. On August 8, 2018, the Sniders moved to dismiss the bankruptcy proceedings without discharge. Wells Fargo RJN, Ex. 10. The trustee and creditors did not object and the bankruptcy court granted the motion on August 20, 2018. Wells Fargo RJN, Ex. 1. On November 20, 2018, a Notice of Trustee Sale ("NOTS") was recorded with respect to the Sniders' home. Wilmington RJN, Ex. 13. The present action was filed approximately a week later.

### III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss under

Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Courts may also take judicial notice of facts that are "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)). For example, courts may take judicial notice of matters of public record. Courts may not, however, take judicial notice of disputed facts contained in such records. *Id.*

Defendants request judicial notice of various documents filed in the bankruptcy proceedings in order to illustrate the course of those proceedings. The Sniders object generally to judicial notice of these documents to the extent Defendants seek to rely on the truth of the facts recited therein. These documents simply show the trajectory of the bankruptcy process and do not appear to touch on any disputed questions of fact between the parties. Accordingly, judicial notice is granted with respect to Exhibits 5, 6, 7, and 13 to the Wilmington Defendants' Request for Judicial Notice and Exhibits 1, 4, 5, 6, 8, and 10 to Wells Fargo's Request for Judicial Notice.

**IV. DISCUSSION**

**A. Judicial Estoppel of Plaintiffs' Claims**

Defendants invoke the doctrine of judicial estoppel to preclude the Sniders from prosecuting any of their claims for failure to disclose them during the bankruptcy proceedings. Judicial estoppel is an equitable doctrine designed to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the

moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (quotation omitted). The appropriateness of judicial estoppel in a particular circumstance is subject to judicial discretion and is "not reducible to any general formulation." *Id.* at 750. Nonetheless, courts often consider (1) whether the party's later position is "clearly inconsistent" with its prior position, (2) whether the party persuaded a court to accept the party's earlier position, and (3) whether the party would derive an unfair advantage or unfairly harm the opposing party if allowed to assert the later inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001).

In the bankruptcy context, plaintiffs are routinely "estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.* at 783 (explaining that the "*integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*"). This is because incomplete disclosure makes it difficult for the bankruptcy court and creditors to make informed decisions during the course of the bankruptcy proceedings. *See Billmeyer v. Plaza Bank of Commerce*, 42 Cal. App. 4th 1086, 1091-92 (Cal. Ct. App. 1995). Accordingly, courts in the Ninth Circuit apply a "presumption of deliberate manipulation" to a plaintiff's failure to disclose during bankruptcy. *Ah Quin v. Cty. of Kauai DOT*, 733 F.3d 267, 271 (9th Cir. 2013).

It is undisputed that, as debtors in a bankruptcy proceeding, the Sniders were obligated to disclose all unliquidated claims in their bankruptcy schedules but failed to do so. As explained in the prior Order Re Motions to Dismiss, issued on February 12, 2019, this lack of disclosure is inconsistent with their attempt to prosecute these claims now. Moreover, by approving the Sniders' Chapter 13 plan, the bankruptcy court implicitly accepted the Sniders' incomplete representations regarding their assets. The prior Order Re Motions to Dismiss nonetheless rejected Defendants' arguments in favor of judicial estoppel because no discharge was entered and there appeared to be little evidence of either prejudice to creditors or bad faith on the part of the Sniders. In reaching this conclusion, the Court declined to follow district courts that have held that entry of an automatic bankruptcy stay alone is enough to justify judicial estoppel regardless of the

circumstances.

Defendants' motions to dismiss renew the argument in favor of judicial estoppel and provide additional facts tending to show that the Sniders benefitted from the omissions in their bankruptcy schedules, that creditors were prejudiced as a result of these omissions, and that the integrity of the bankruptcy proceeding was undermined. First, the Sniders were able to delay foreclosure for the duration of those proceedings. Furthermore, under the Chapter 13 plan, the Sniders were permitted to pay 0% interest to Wells Fargo and other creditors, rather than the contractual interest rate. This plan was in place for over a year. The Sniders also moved unopposed for an order compelling Wells Fargo to participate in the bankruptcy court's loan modification program. Wells Fargo contends it would have had little reason to agree to this process had the company known the Sniders intended later to reverse course and dispute the amount owed in the first place. Finally, Wells Fargo argues that other creditors may have behaved differently during bankruptcy had they known the Sniders were claiming reduced debt obligations to Wells Fargo and were seeking damages from the bank.

Defendants describes a concerning course of events. The Sniders' failure to disclose their claims against Wells Fargo casts doubt on the fairness and propriety of the plan terms.[2] Indeed, the Sniders' creditors could have perhaps sought more favorable plan terms had they known of these additional assets and the possibility that the debt owed to Wells Fargo was lower than it appeared. Moreover, Wells Fargo likely would not have agreed to expend resources on the bankruptcy court's mediation process had it known the Sniders would later challenge the amount owed under the plan. In sum, the Sniders' failure to disclose their claims undermined the integrity of bankruptcy proceedings.

---

[2] The Sniders represented at oral argument that a 0% interest rate is standard in Chapter 13 bankruptcy plans and that the omissions in their bankruptcy schedules had no bearing on this term. Be that as it may, the Sniders' creditors and the bankruptcy court still relied upon these schedules in evaluating the bankruptcy plan as a whole. Therefore, the Sniders' omission of potentially valuable claims against Wells Fargo is pertinent. These undisclosed claims implicate both the amount of debt the Sniders owed, as well as the potential assets available to the Sniders to pay other creditors.

The Sniders' primary rejoinder is that judicial estoppel is inappropriate because "Wells Fargo does not show how anything would have changed if there had been disclosure." Opp. to Wells Fargo 6. They further contend they "ha[d] no motive to conceal the cause of action since it would have no monetary effect on confirmation of the [C]hapter 13 plan." *Id.* at 11. In the bankruptcy context, however, courts "apply a presumption of deliberate manipulation." *Ah Quin*, 733 F.3d at 271. Here, that presumption is bolstered by the benefit the Sniders derived from the bankruptcy process, combined with the overall distortion of that process.

In short, while the mere fact of an automatic stay does not always justify the application of judicial estoppel, the Sniders' failure to disclose their claims, only to pursue them immediately after the bankruptcy case was dismissed, undermined the integrity of the bankruptcy process and unfairly prejudiced creditors.[3] Indeed, the Sniders admitted at oral argument that the reason they ultimately dismissed the bankruptcy proceeding, which had been ongoing for well over a year, was to enable them to pursue these undisclosed claims. The FAC is, accordingly, dismissed without leave to amend.

### B. Collateral Estoppel

Although the question of judicial estoppel fully resolves Defendants' motions to dismiss, addressing the related question of collateral estoppel may facilitate appellate review. Wells Fargo argues the Sniders should be estopped from contesting the amount owed under the loan agreement because the issue was resolved during the bankruptcy proceedings. Confirmation of a bankruptcy plan "alters the status quo and fixes the rights and obligations of the parties." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015). In other words, "[c]onfirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." *Id.*; *see also HSBC Bank USA, N.A. v. Blendheim (In re*

---

[3] The Sniders argue, rather perplexingly, that because Defendants argue the claims are meritless these claims would not meaningfully have increased the value of the Sniders' assets and therefore would have no effect on the bankruptcy proceedings. Clearly, the mere fact that Defendants seek to defeat the Sniders on the merits does not automatically render the claims valueless.

*Blendheim)*, 803 F.3d 477, 486-87 (9th Cir. 2015); *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect.").

The Sniders do not dispute that, by confirming the Sniders' amended bankruptcy plan, the bankruptcy court adjudicated the amount owed to Wells Fargo under the terms of the loan agreement. The Sniders argue, however, that it would be unfair to allow Wells Fargo to obtain the benefit of either collateral estoppel or res judicata based on its ability to "sneak [] illegal interest into a bankruptcy proof of claim undetected." Opp. to Wells Fargo 16. As a preliminary matter, it is not clear how Wells Fargo's inclusion of information in a publicly filed proof of claim qualifies as "sneak[ing]." More importantly, however, the Sniders fail to point to any authority in support of their position. Accordingly, even if judicial estoppel did not apply, the Sniders' would be estopped from contesting the amount owed to Wells Fargo as confirmed by the plan, including the interest rate charged and the fees associated with the purchase of insurance.

**C. Dissolution of Preliminary Injunction**

In light of dismissal of the FAC without leave to amend, the motion to dissolve the preliminary injunction is granted. Even if the FAC were to survive the motion to dismiss, dissolution of the preliminary injunction would still be appropriate in light of new evidence which shows there is no serious question going to the merits of the Sniders' claim under California Civil Code § 2923.6.

**D. Request for Attorneys' Fees**

The Sniders request attorneys' fees based on their prior success in obtaining a preliminary injunction. Under the California Civil Code, courts may award a "prevailing borrower" attorneys' fees and costs in a HBOR action. Cal. Civ. Code § 2924.12(h). The term "prevailing borrower" may include a borrower who obtains injunctive relief. *Id*. The decision whether to award attorneys' fees under this provision ultimately falls within the court's discretion. *Hardie v. Nationstar Mortg. LLC*, 32 Cal. App. 5th 714, 724-25 (Cal. Ct. App. 2019); *Millman v. Wilmington Sav. Fund Soc., FSB*, No. 17-cv-04123-EMC, 2018 WL 2021236, at *5 (N.D. Cal.

May 1, 2018) (declining to award attorneys' fees based in part on due process concerns). The preliminary injunction at issue here was obtained under the "sliding scale" test based on a "serious question" going to the merits rather than a likelihood of success on the merits. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Furthermore, the production of additional evidence has undermined even the limited finding of a serious question going to the merits. In view of these facts and in the interest of justice, the request for attorneys' fees is denied.

## V. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted. All claims set forth in the FAC are, accordingly, dismissed without leave to amend. The Wilmington Defendants' motion to dissolve the preliminary injunction is also granted. The Sniders' motion for attorneys' fees is denied. Finally, the Wilmington Defendants' motion to strike is denied as moot.

**IT IS SO ORDERED**.

Dated: July 31, 2019

_____
RICHARD SEEBORG
United States District Judge